## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | 19-32253 |
| | ) | |
| CARMEN J. GONZALEZ, | ) | Chapter 13 |
| | ) | |
| | ) | Judge BARNES |
| Debtor(s). | ) | |

### NOTICE OF MOTION

**The following parties have been served via electronic mail:**
U.S. Trustee: USTPRegion11.ES.ECF@usdoj.gov
Marilyn O. Marshall, Chapter 13 Trustee: courtdocs@chi13.com

**The following party(s) have been served via regular US mail:**
See attached service list

    Please take notice that I shall appear before the following named Bankruptcy Judge, or any other Judge presiding in his stead, at 219 S. Dearborn, Chicago, IL 60604, in the following courtroom (or any other place posted), and present the attached **Motion for Leave to Sell Real Property and Shorten Notice**, at which time and place you may appear:

    JUDGE:  BARNES
    ROOM:  744
    DATE:  February 20, 2020
    TIME:  9:30 a.m.            /s/Christine H. Clar
                                        Christine H. Clar, A.R.D.C. #6202332
                                        Attorney for the Debtor(s)

### PROOF OF SERVICE
    The undersigned does hereby certify that copies of this Notice and attachments were served to the above persons or entities, if service by mail was indicated above, by depositing same in the U.S. Mail at Wheeling, Illinois 60090, before 5:00 p.m. on January 23, 2020 with proper postage prepaid, unless a copy was provided electronically by the Bankruptcy Court.

                                                          /s/Christine H. Clar
                                                          Christine H. Clar, A.R.D.C. #6202332
                                                          Attorney for the Debtor(s)

DAVID M. SIEGEL & ASSOCIATES
Attorney for the Debtor(s)
790 Chaddick Drive
Wheeling, IL 60090
847/ 520-8100
davidsiegelbk@gmail.com

**The following party(s) have been served via regular US mail:**

Carmen J. Gonzalez
1724 E. 54th St., Unit E
Chicago, IL 60615

IRS
P.O. Box 7346
Philadelphia, PA 19114

Illinois Dept. of Revenue
Bankruptcy Section
P.O. Box 19035
Springfield, IL 62794-9035

Jefferson Capital
P.O. Box 7999
St. Cloud, MN 56302-9617

City of Chicago, Dept. of Finance
Utility Billing & Cus. Service
Arnold Scott Harris
111 W. Jackson, Ste. 600
Chicago, IL 60604

JP Morgan Chase Bank
National Bankruptcy Dept.
P.O. Box 29505 AZ105757
Phoenix, AZ 85038

Bank of America
P.O. Box 982284
El Paso, TX 79998

City of Chicago, Dept. of Finance
Arnold Scott Harris
111 W. Jackson, Ste. 600
Chicago, IL 60604

Deutsche Bank National Trust
c/o Specialized Loan Servicing
8745 Lucent Blvd., Ste. 300
Highlands Ranch, CO 80129

Midland Funding
P.O. Box 2011
Warren, MI 48090

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | | |
|---|---|---|
| **In Re:** | ) | 19-32253 |
| | ) | |
| **CARMEN J. GONZALEZ,** | ) | Chapter 13 |
| | ) | |
| | ) | Judge BARNES |
| **Debtor(s).** | ) | |

## MOTION FOR LEAVE TO SELL REAL PROPERTY AND SHORTEN NOTICE

NOW COMES the Debtor, by and through her attorneys, DAVID M. SIEGEL & ASSOCIATES, LLC, to present their Motion, and in support thereof states as follows:

1. Jurisdiction is proper and venue is fixed in this Court with respect to these parties.

2. November 13, 2019 the Debtor filed a voluntary petition for relief pursuant to Chapter 13 under Title 11 USC. The Chapter 13 plan is not yet confirmed. Marilyn O. Marshall was appointed Trustee in this case.

3. The Debtor owns real estate located at 1724 E. 54th St., Unit E, Chicago, IL 60615..

4. The Debtor desires to sell said property and shall have any net proceeds paid to her Chapter 13 plan. (Contract pages attached as Exhibit A.)

5. The sale of said property will not prejudice any creditors, and will facilitate the completion of the Debtors' Chapter 13 plan.

WHEREFORE, the Debtor, CARMEN J. GONZALEZ, prays that this Honorable Court grant Debtors' Motion for Leave to Sell Real Property.

                                        Respectfully Submitted,
                                        /s/ Christine H. Clar
                                        Christine H. Clar, A.R.D.C. #6202332
                                        Attorney for the Debtor(s)

DAVID M. SIEGEL & ASSOCIATES, LLC
Attorney for the Debtor(s)
790 Chaddick Drive
Wheeling, IL 60090
847/ 520-8100
davidsiegelbk@gmail.com

# EXHIBIT A

# MULTI-BOARD RESIDENTIAL REAL ESTATE CONTRACT 7.0

1. **THE PARTIES:** Buyer and Seller are hereinafter referred to as the "Parties."
2. Buyer Name(s) *[PLEASE PRINT]* Berk Diler and Eliana K Butler
3. Seller Name(s) *[PLEASE PRINT]* Carmen J Gonzalez
4. **If Dual Agency applies, check here** ❏ **and complete Optional Paragraph 29.**

5. **2. THE REAL ESTATE:** Real Estate is defined as the property, all improvements, the fixtures and Personal Property
6. included therein. Seller agrees to convey to Buyer or to Buyer's designated grantee, the Real Estate with
7. approximate lot size or acreage of 1,200 sq. ft. _____ commonly known as:
8. 1724 E 54th St Unit E                              Chicago         IL    60615      Cook County
9. Address                 Unit # (If applicable)      City           State    Zip       County
10. Permanent Index Number(s): 20121120350000        ☒ Single Family Attached ❏ Single Family Detached ❏ Multi-Unit
11. **If Designated Parking is Included:** # of space(s) N/A ; identified as space(s) # N/A ; location N/A
12. *[CHECK TYPE]* ❏ deeded space, PIN: N/A _____ ❏ limited common element ❏ assigned space.
13. **If Designated Storage is Included:** # of space(s) N/A ; identified as space(s) # N/A ; location N/A
14. *[CHECK TYPE]* ❏ deeded space, PIN: N/A _____ ❏ limited common element ❏ assigned space.

15. **3. FIXTURES AND PERSONAL PROPERTY AT NO ADDED VALUE:** All of the fixtures and included Personal Property
16. are owned by Seller and to Seller's knowledge are in operating condition on Date of Acceptance, unless otherwise
17. stated herein. Seller agrees to transfer to Buyer all fixtures, all heating, electrical, plumbing, and well systems
18. together with the following items at no added value by Bill of Sale at Closing *[CHECK OR ENUMERATE APPLICABLE ITEMS]*:

19. X Refrigerator           __ Wine/Beverage Refrigerator   X Light Fixtures, as they exist    X Fireplace Gas Log(s)
20. X Oven/Range/Stove       __ Sump Pump(s)                 X Built-in or attached shelving    X Smoke Detectors
21. X Microwave              __ Water Softener (unless rented) X All Window Treatments & Hardware X Carbon Monoxide Detectors
22. X Dishwasher             X Central Air Conditioning      __ Satellite Dish                  __ Invisible Fence System, Collar & Box
23. X Garbage Disposal       X Central Humidifier            __ Wall Mounted Brackets (AV/TV)   X Garage Door Opener(s)
24. __ Trash Compactor       __ Central Vac & Equipment      X Security System(s) (unless rented)   with all Transmitters
25. X Washer                 X All Tacked Down Carpeting     __ Intercom System                 __ Outdoor Shed
26. X Dryer                  X Existing Storms & Screens     __ Electronic or Media Air Filter(s) __ Outdoor Playset(s)
27. __ Attached Gas Grill    __ Window Air Conditioner(s)    __ Backup Generator System         X Planted Vegetation
28. X Water Heater           X Ceiling Fan(s)                X Fireplace Screens/Doors/Grates   X Hardscape

29. **Other Items Included at No Added Value:** N/A
30. **Items Not Included:** light fixtures in the kitchen, living room and dining room
31. Seller warrants to Buyer that all fixtures, systems and Personal Property included in this Contract shall be in
32. operating condition at Possession except: N/A
33. A system or item shall be deemed to be in operating condition if it performs the function for which it is intended,
34. regardless of age, and does not constitute a threat to health or safety.
35. **If Home Warranty applies, check here** ❏ **and complete Optional Paragraph 32.**

36. **4. PURCHASE PRICE AND PAYMENT:** The Purchase Price is $ 510,000.00 . After the payment of Earnest
37. Money as provided below, the balance of the Purchase Price, as adjusted by prorations, shall be paid at Closing in
38. "Good Funds" as defined by law.
39.    a) **CREDIT AT CLOSING:** *[IF APPLICABLE]* Provided Buyer's lender permits such credit to show on the final
40.       settlement statement or lender's closing disclosure, **and if not, such lesser amount as the lender permits,** Seller
41.       agrees to credit $ 10,000.00 to Buyer at Closing to be applied to prepaid expenses, closing costs or both.
42.    b) **EARNEST MONEY:** Earnest Money of $ 10,000.00 shall be tendered to Escrowee on or before 2
43.       Business Days after Date of Acceptance. Additional Earnest Money, if any, of $ N/A shall be tendered
44.       by 2 bus. post A/I , 20 . Earnest Money shall be held in trust for the mutual benefit of the Parties by

*Buyer Initial* BD  *Buyer Initial* EKB   *Seller Initial* _____ *Seller Initial* _____
*Address:* 1724 E 54th St Unit E, Chicago, IL 60615 _____ v7.0
*Page 1 of 13*

45   *[CHECK ONE]*: ☒ Seller's Brokerage; ❏ Buyer's Brokerage; ❏ As otherwise agreed by the Parties, as "Escrowee."
46   **In the event the Contract is declared null and void or is terminated, Earnest Money shall be disbursed pursuant to Paragraph 26.**
47   c) **BALANCE DUE AT CLOSING:** The Balance Due at Closing shall be the Purchase Price, plus or minus
48   prorations, less Earnest Money paid, less any credits at Closing, and shall be payable in Good Funds at Closing.

49 5. **CLOSING:** Closing shall be on March 16th _____, 20 20__ or at such time as mutually agreed by the Parties in
50 writing. Closing shall take place at the escrow office of the title insurance company, its underwriter, or its issuing
51 agent that will issue the Owner's Policy of Title Insurance, whichever is situated nearest the Real Estate.

52 6. **POSSESSION:** Unless otherwise provided in Optional Paragraph 35, Seller shall deliver possession to Buyer at
53 Closing. Possession shall be deemed to have been delivered when Seller and all occupants (if any) have vacated
54 the Real Estate and delivered keys to the Real Estate to Buyer or to the office of the Seller's Brokerage.

55 7. **FINANCING:** *[INITIAL ONLY ONE OF THE FOLLOWING SUBPARAGRAPHS a, b, or c]*
56 _BD_ _EKB_ _____ a) **LOAN CONTINGENCY:** Not later than **forty-five (45) days after Date of Acceptance or five**
57 **(5) Business Days prior to the date of Closing,** whichever is earlier, ("Loan Contingency Date") Buyer shall
58 provide written evidence from Buyer's licensed lending institution confirming that Buyer has received loan
59 approval subject only to "at close" conditions, matters of title, survey, and matters within Buyer's control for a loan
60 as follows: *[CHECK ONE]* ☒ fixed; ❏ adjustable; *[CHECK ONE]* ☒ conventional; ❏ FHA; ❏ VA; ❏ USDA;
61 ❏ other _N/A_____ loan for _95_ % of the Purchase Price, plus private mortgage insurance (PMI),
62 if required, with an interest rate (initial rate if an adjustable rate mortgage used) not to exceed _N/A_ % per annum,
63 amortized over not less than _15_ years. Buyer shall pay discount points not to exceed _N/A_ % of the loan amount.
64 Buyer shall pay origination fee(s), closing costs charged by lender, and title company escrow closing fees.
65 If Buyer, having applied for the loan specified above, is unable to provide such loan approval and serves Notice to
66 Seller not later than the Loan Contingency Date, this Contract shall be null and void. If Buyer is unable to provide
67 such written evidence not later than the date specified herein or by any extension date agreed to by the Parties,
68 Seller shall have the option of declaring this Contract terminated by giving Notice to Buyer. If prior to the Seller
69 serving such Notice to terminate, Buyer provides written evidence of such loan approval, this Contract shall remain
70 in full force and effect.
71 Upon the expiration of ten (10) Business Days after Date of Acceptance, if Buyer has failed to make a loan
72 application and pay all fees required for such application to proceed and the appraisal to be performed, Seller shall
73 have the option to declare this Contract terminated by giving Notice to Buyer not later than five (5) Business Days
74 thereafter or any extension thereof agreed to by the Parties in writing.
75 **A Party causing delay in the loan approval process shall not have the right to terminate under this**
76 **subparagraph. In the event neither Party elects to declare this Contract terminated as specified above, or as**
77 **otherwise agreed, then this Contract shall continue in full force and effect without any loan contingencies.**
78 **Unless otherwise provided in Paragraph 30, this Contract is not contingent upon the sale and/or closing of**
79 **Buyer's existing real estate.** Buyer shall be deemed to have satisfied the financing conditions of this subparagraph
80 if Buyer obtains a loan approval in accordance with the terms of this subparagraph even though the loan is
81 conditioned on the sale and/or closing of Buyer's existing real estate.
82 If Buyer is seeking FHA, VA, or USDA financing, **required amendments and disclosures shall be attached to this**
83 **Contract.** If VA, the Funding Fee, or if FHA, the Mortgage Insurance Premium (MIP), shall be paid by Buyer.

84 _____ b) **CASH TRANSACTION WITH NO MORTGAGE:** *[ALL CASH]* If this selection is made, Buyer will pay
85 at Closing, in the form of "Good Funds," the Balance Due at Closing. Buyer represents to Seller, as of the Date of Offer,
86 that Buyer has sufficient funds available to satisfy the provisions of this subparagraph. Buyer agrees to verify the above
87 representation upon the reasonable request of Seller and to authorize the disclosure of such financial information to
88 Seller, Seller's attorney or Seller's broker that may be reasonably necessary to prove the availability of sufficient funds

*Buyer Initial* _BD_  *Buyer Initial* _EKB_       *Seller Initial* _____  *Seller Initial* _____
*Address:* 1724 E 54th St Unit E, Chicago, IL 60615 _____ v7.0

89 to close. Buyer understands and agrees that, so long as Seller has fully complied with Seller's obligations under this
90 Contract, any act or omission outside of the control of Seller, whether intentional or not, that prevents Buyer from
91 satisfying the Balance Due at Closing, shall constitute a material breach of this Contract by Buyer. The Parties shall
92 share the title company escrow closing fee equally. **Unless otherwise provided in Paragraph 30, this Contract shall**
93 **not be contingent upon the sale and/or closing of Buyer's existing real estate.**

94 _____ c) **CASH TRANSACTION, MORTGAGE ALLOWED:** If this selection is made, Buyer will pay at closing,
95 in the form of "Good Funds," the Balance Due at Closing. Buyer represents to Seller, as of the Date of Offer, that Buyer
96 has sufficient funds available to satisfy the provisions of this subparagraph. Buyer agrees to verify the above
97 representation upon the reasonable request of Seller and to authorize the disclosure of such financial information to
98 Seller, Seller's attorney or Seller's broker that may be reasonably necessary to prove the availability of sufficient funds
99 to close. Notwithstanding such representation, Seller agrees to reasonably and promptly cooperate with Buyer so that
100 Buyer may apply for and obtain a mortgage loan or loans including but not limited to providing access to the Real
101 Estate to satisfy Buyer's obligations to pay the Balance Due at Closing. Such cooperation shall include the performance
102 in a timely manner of all of Seller's pre-closing obligations under this Contract. **This Contract shall NOT be contingent**
103 **upon Buyer obtaining financing.** Buyer understands and agrees that, so long as Seller has fully complied with Seller's
104 obligations under this Contract, any act or omission outside of the control of Seller, whether intentional or not, that
105 prevents Buyer from satisfying the Balance Due at Closing shall constitute a material breach of this Contract by Buyer.
106 Buyer shall pay the title company escrow closing fee if Buyer obtains a mortgage; provided however, if Buyer elects
107 to close without a mortgage loan, the Parties shall share the title company escrow closing fee equally. **Unless otherwise**
108 **provided in Paragraph 30, this Contract shall not be contingent upon the sale and/or closing of Buyer's existing**
109 **real estate.**

110 **8. STATUTORY DISCLOSURES:** If applicable, prior to signing this Contract, Buyer:
111 *[CHECK ONE]* ❑ has ☒ has not received a completed Illinois Residential Real Property Disclosure;
112 *[CHECK ONE]* ☒ has ❑ has not received the EPA Pamphlet, "Protect Your Family From Lead In Your Home;"
113 *[CHECK ONE]* ❑ has ☒ has not received a Lead-Based Paint Disclosure;
114 *[CHECK ONE]* ☒ has ❑ has not received the IEMA, "Radon Testing Guidelines for Real Estate Transactions;"
115 *[CHECK ONE]* ❑ has ☒ has not received the Disclosure of Information on Radon Hazards.

116 **9. PRORATIONS:** The requirements contained in this paragraph shall survive the Closing. Proratable items shall
117 be prorated to and including the Date of Closing and shall include without limitation, general real estate taxes,
118 rents and deposits (if any) from tenants; Special Service Area or Special Assessment Area tax for the year of Closing
119 only; utilities, water and sewer, pre-purchased fuel; and Homeowner or Condominium Association fees (and
120 Master/Umbrella Association fees, if applicable). Accumulated reserves of a Homeowner/Condominium
121 Association(s) are not a proratable item.

122 a) The general real estate taxes shall be prorated to and including the date of Closing based on __110__ % of
123 the most recent ascertainable full year tax bill. All general real estate tax prorations shall be final as of Closing,
124 except as provided in Paragraph 23. If the amount of the most recent ascertainable full year tax bill reflects a
125 homeowner, senior citizen, disabled veteran or other exemption, a senior freeze or senior deferral, then Seller
126 has submitted or will submit in a timely manner all necessary documentation to the appropriate governmental
127 entity, before or after Closing, to preserve said exemption(s). **The proration shall not include exemptions to**
128 **which the Seller is not lawfully entitled.**

129 b) Seller represents, if applicable, that as of Date of Acceptance Homeowner/Condominium Association(s)
130 fees are $ __203.00__ per __month__ (and, if applicable, Master/Umbrella Association fees are
131 $ __N/A__ per __N/A__). Seller agrees to pay prior to or at Closing the remaining balance of any
132 special assessments by the Association(s) confirmed prior to Date of Acceptance.

*Buyer Initial* __BV__  *Buyer Initial* __EKB__   *Seller Initial* _____  *Seller Initial* _____
*Address:* 1724 E 54th St Unit E, Chicago, IL 60615 _____ v7.0
*Page 3 of 13*

c) Special Assessment Area or Special Service Area installments due after the year of Closing shall not be proratable items and shall be paid by Buyer, unless otherwise provided by ordinance or statute.

**10. ATTORNEY REVIEW:** Within five (5) Business Days after Date of Acceptance, the attorneys for the respective Parties, by Notice, may:

a) Approve this Contract; or

b) Disapprove this Contract, which disapproval shall not be based solely upon the Purchase Price; or

c) Propose modifications to this Contract, except for the Purchase Price, which proposal shall be conclusively deemed a counteroffer notwithstanding any language contained in any such proposal purporting to state the proposal is not a counteroffer. If after expiration of ten (10) Business Days after Date of Acceptance written agreement has not been reached by the Parties with respect to resolution of all proposed modifications, either Party may terminate this Contract by serving Notice, whereupon this Contract shall be immediately deemed terminated; or

d) Offer proposals specifically referring to this subparagraph d) which shall not be considered a counteroffer. Any proposal not specifically referencing this subparagraph d) shall be deemed made pursuant to subparagraph c) as a modification. If proposals made with specific reference to this subparagraph d) are not agreed upon, **neither Buyer nor Seller may declare this contract null and void, and this contract shall remain in full force and effect.**

**If Notice of disapproval or proposed modifications is not served within the time specified herein, the provisions of this paragraph shall be deemed waived by the Parties and this Contract shall remain in full force and effect. If Notice of termination is given, said termination shall be absolute and the Contract rendered null and void upon the giving of Notice, notwithstanding any language proffered by any Party purporting to permit unilateral reinstatement by withdrawal of any proposal(s).**

**11. WAIVER OF PROFESSIONAL INSPECTIONS:** *[INITIAL IF APPLICABLE]* ____ ____ ____ ____ Buyer acknowledges the right to conduct inspections of the Real Estate and hereby waives the right to conduct any such inspections of the Real Estate, and further agrees that the provisions of Paragraph 12 shall not apply.

**12. PROFESSIONAL INSPECTIONS AND INSPECTION NOTICES:** *[NOT APPLICABLE IF PARAGRAPH 11 IS INITIALED]* Buyer may conduct at Buyer's expense (unless payment for such expense is otherwise required by governmental regulation) any or all of the following inspections of the Real Estate by one or more licensed or certified inspection services: home, radon, environmental, lead-based paint, lead-based paint hazards or wood-destroying insect infestation, or any other inspections desired by Buyer in the exercise of reasonable due diligence. Seller agrees to make all areas of the Real Estate accessible for inspection(s) upon reasonable notice and to have all utilities turned on during the time of such inspections. Buyer shall indemnify Seller and hold Seller harmless from and against any loss or damage caused by any acts of Buyer or any person performing any inspection on behalf of Buyer.

a) The request for repairs shall cover only the major components of the Real Estate, limited to central heating and cooling system(s), plumbing and well system, electrical system, roof, walls, windows, doors, ceilings, floors, appliances and foundation. A major component shall be deemed to be in operating condition, and therefore not defective within the meaning of this paragraph, if it does not constitute a current threat to health or safety, and performs the function for which it is intended, regardless of age or if it is near or at the end of its useful life. Minor repairs, routine maintenance items and painting, decorating or other items of a cosmetic nature, no matter the cost to remedy same, do not constitute defects, are not a part of this contingency and shall not be a basis for the Buyer to cancel this Contract. **A request by Buyer for credits or repairs in violation of the terms of this subparagraph shall allow Seller to declare this Contract terminated and direct the return of Buyer's Earnest Money.** If radon mitigation is performed, Seller shall pay for any retest.

*Buyer Initial* __*BD*__ *Buyer Initial* __*EKB*__        *Seller Initial* _____ *Seller Initial* _____
Address: 1724 E 54th St Unit E, Chicago, IL 60615                                                        v7.0
*Page 4 of 13*

176    b) Buyer shall serve Notice upon Seller or Seller's attorney of any major component defects disclosed by any
177    inspection for which Buyer requests resolution by Seller within five (5) Business Days (ten (10) calendar days
178    for a lead-based paint or lead-based paint hazard inspection) after Date of Acceptance. **Buyer shall not send**
179    **any portion of the inspection report with the Notice provided under this subparagraph unless such**
180    **inspection report, or any part thereof, is specifically requested in writing by Seller or Seller's attorney.** If
181    after expiration of ten (10) Business Days after Date of Acceptance written agreement has not been reached by
182    the Parties with respect to resolution of all inspection issues, either Party may terminate this Contract by
183    serving Notice to the other Party, whereupon this Contract shall be immediately deemed terminated.
184    c) Notwithstanding anything to the contrary set forth above in this paragraph, in the event the inspection
185    reveals that the condition of the Real Estate is unacceptable to Buyer and Buyer serves Notice to Seller within
186    five (5) Business Days after Date of Acceptance, this Contract shall be null and void. Said Notice shall not
187    include any portion of the inspection reports unless requested by Seller.
188    d) **Failure of Buyer to conduct said inspection(s) and notify Seller within the time specified operates as a**
189    **waiver of Buyer's rights to terminate this Contract under this Paragraph 12 and this Contract shall remain**
190    **in full force and effect.**

191 **13. HOMEOWNER INSURANCE:** This Contract is contingent upon Buyer obtaining evidence of insurability for an
192 Insurance Service Organization HO-3 or equivalent policy at standard premium rates within ten (10) Business
193 Days after Date of Acceptance. **If Buyer is unable to obtain evidence of insurability and serves Notice with proof**
194 **of same to Seller within the time specified, this Contract shall be null and void. If Notice is not served within**
195 **the time specified, Buyer shall be deemed to have waived this contingency and this Contract shall remain in**
196 **full force and effect.**

197 **14. FLOOD INSURANCE:** Buyer shall have the option to declare this Contract null and void if the Real Estate is
198 located in a special flood hazard area. **If Notice of the option to declare contract null and void is not given to**
199 **Seller within ten (10) Business Days after Date of Acceptance or by the Loan Contingency Date, whichever is**
200 **later, Buyer shall be deemed to have waived such option and this Contract shall remain in full force and effect.**
201 Nothing herein shall be deemed to affect any rights afforded by the Residential Real Property Disclosure Act.

202 **15. CONDOMINIUM/COMMON INTEREST ASSOCIATIONS:** *[IF APPLICABLE]* The Parties agree that the terms
203 contained in this paragraph, which may be contrary to other terms of this Contract, shall supersede any conflicting
204 terms, and shall apply to property subject to the Illinois Condominium Property Act and the Common Interest
205 Community Association Act or other applicable state association law ("Governing Law").
206    a) Title when conveyed shall be good and merchantable, subject to terms and provisions of the Declaration of
207    Condominium/Covenants, Conditions and Restrictions ("Declaration/CCRs") and all amendments; public and
208    utility easements including any easements established by or implied from the Declaration/CCRs or
209    amendments thereto; party wall rights and agreements; limitations and conditions imposed by the Governing
210    Law; installments due after the date of Closing of general assessments established pursuant to the Declaration/CCRs.
211    b) Seller shall be responsible for payment of all regular assessments due and levied prior to Closing and for
212    all special assessments confirmed prior to Date of Acceptance.
213    c) Seller shall notify Buyer of any proposed special assessment or increase in any regular assessment between
214    Date of Acceptance and Closing. The Parties shall have three (3) Business Days to reach agreement relative to
215    payment thereof. Absent such agreement either Party may declare the Contract null and void.
216    d) Seller shall, within ten (10) Business Days from Date of Acceptance, apply for those items of disclosure
217    upon sale as described in the Governing Law, and provide same in a timely manner, but no later than the time
218    period provided for by law. This Contract is subject to the condition that Seller be able to procure and provide
219    to Buyer a release or waiver of any right of first refusal or other pre-emptive rights to purchase created by the

*Buyer Initial* __BO__ *Buyer Initial* __EKB__     *Seller Initial* _____ *Seller Initial* _____
*Address:* 1724 E 54th St Unit E, Chicago, IL 60615     v7.0
*Page 5 of 13*

220 Declaration/CCRs. In the event the Condominium Association requires the personal appearance of Buyer or
221 additional documentation, Buyer agrees to comply with same.
222 e) In the event the documents and information provided by Seller to Buyer disclose that the existing
223 improvements are in violation of existing rules, regulations or other restrictions or that the terms and
224 conditions contained within the documents would unreasonably restrict Buyer's use of the Real Estate or
225 would result in financial obligations unacceptable to Buyer in connection with owning the Real Estate, then
226 Buyer may declare this Contract null and void by giving Notice to Seller within five (5) Business Days after the
227 receipt of the documents and information required by this paragraph, listing those deficiencies which are
228 unacceptable to Buyer. If Notice is not served within the time specified, Buyer shall be deemed to have waived
229 this contingency, and this Contract shall remain in full force and effect.
230 f) Seller shall provide a certificate of insurance showing Buyer and Buyer's mortgagee, if any, as an insured.

231 **16. THE DEED:** Seller shall convey or cause to be conveyed to Buyer or Buyer's designated grantee good and
232 merchantable title to the Real Estate by recordable Warranty Deed, with release of homestead rights, (or the
233 appropriate deed if title is in trust or in an estate), and with real estate transfer stamps to be paid by Seller (unless
234 otherwise designated by local ordinance). Title when conveyed will be good and merchantable, subject only to:
235 covenants, conditions and restrictions of record and building lines and easements, if any, provided they do not
236 interfere with the current use and enjoyment of the Real Estate; and general real estate taxes not due and payable
237 at the time of Closing.

238 **17. MUNICIPAL ORDINANCE, TRANSFER TAX, AND GOVERNMENTAL COMPLIANCE:**
239 a) The Parties are cautioned that the Real Estate may be situated in a municipality that has adopted a pre-
240 closing inspection or disclosure requirement, municipal Transfer Tax or other similar ordinances. Cost of
241 transfer taxes, inspection fees, and any repairs required by an inspection pursuant to municipal ordinance shall
242 be paid by the Party designated in such ordinance unless otherwise agreed to by the Parties.
243 b) The Parties agree to comply with the reporting requirements of the applicable sections of the Internal
244 Revenue Code, the Foreign Investment in Real Property Tax Act (FIRPTA), and the Real Estate Settlement
245 Procedures Act of 1974, as amended.

246 **18. TITLE:** At Seller's expense, Seller will deliver or cause to be delivered to Buyer or Buyer's attorney within
247 customary time limitations and sufficiently in advance of Closing, as evidence of title in Seller or Grantor, a title
248 commitment for an ALTA title insurance policy in the amount of the Purchase Price with extended coverage by a
249 title company licensed to operate in the State of Illinois, issued on or subsequent to Date of Acceptance, subject
250 only to items listed in Paragraph 16 and shall cause a title policy to be issued with an effective date as of Closing.
251 The requirement to provide extended coverage shall not apply if the Real Estate is vacant land. The commitment
252 for title insurance furnished by Seller will be presumptive evidence of good and merchantable title as therein
253 shown, subject only to the exceptions therein stated. **If the title commitment discloses any unpermitted**
254 **exceptions or if the Plat of Survey shows any encroachments or other survey matters that are not acceptable to**
255 **Buyer, then Seller shall have said exceptions, survey matters or encroachments removed, or have the title**
256 **insurer commit to either insure against loss or damage that may result from such exceptions or survey matters**
257 **or insure against any court-ordered removal of the encroachments.** If Seller fails to have such exceptions waived
258 or insured over prior to Closing, Buyer may elect to take title as it then is with the right to deduct from the Purchase
259 Price prior encumbrances of a definite or ascertainable amount. Seller shall furnish to Buyer at Closing an Affidavit
260 of Title covering the date of Closing, and shall sign any other customary forms required for issuance of an ALTA
261 Insurance Policy.

262 **19. PLAT OF SURVEY:** Not less than one (1) Business Day prior to Closing, except where the Real Estate is a
263 condominium, Seller shall, at Seller's expense, furnish to Buyer or Buyer's attorney a Plat of Survey that conforms

Buyer Initial __BD__  Buyer Initial __EKB__    Seller Initial _____ Seller Initial _____
Address: 1724 E 54th St Unit E, Chicago, IL 60615                                    _v7.0_
Page 6 of 13

to the current Minimum Standard of Practice for boundary surveys, is dated not more than six (6) months prior to the date of Closing, and is prepared by a professional land surveyor licensed to practice land surveying under the laws of the State of Illinois. The Plat of Survey shall show visible evidence of improvements, rights of way, easements, use and measurements of all parcel lines. The land surveyor shall set monuments or witness corners at all accessible corners of the land. **All such corners shall also be visibly staked or flagged.** The Plat of Survey shall include the following statement placed near the professional land surveyor's seal and signature: "This professional service conforms to the current Illinois Minimum Standards for a boundary survey." A Mortgage Inspection, as defined, is not a boundary survey and is not acceptable.

**20. DAMAGE TO REAL ESTATE OR CONDEMNATION PRIOR TO CLOSING:** If prior to delivery of the deed the Real Estate shall be destroyed or materially damaged by fire or other casualty, or the Real Estate is taken by condemnation, then Buyer shall have the option of either terminating this Contract (and receiving a refund of Earnest Money) or accepting the Real Estate as damaged or destroyed, together with the proceeds of the condemnation award or any insurance payable as a result of the destruction or damage, which gross proceeds Seller agrees to assign to Buyer and deliver to Buyer at Closing. Seller shall not be obligated to repair or replace damaged improvements. The provisions of the Uniform Vendor and Purchaser Risk Act of the State of Illinois shall be applicable to this Contract, except as modified by this paragraph.

**21. CONDITION OF REAL ESTATE AND INSPECTION:** Seller agrees to leave the Real Estate in broom clean condition. All refuse and personal property that is not to be conveyed to Buyer shall be removed from the Real Estate at Seller's expense prior to delivery of Possession. Buyer shall have the right to inspect the Real Estate, fixtures and included Personal Property prior to Possession to verify that the Real Estate, improvements and included Personal Property are in substantially the same condition as of Date of Acceptance, normal wear and tear excepted.

**22. SELLER REPRESENTATIONS:** Seller's representations contained in this paragraph shall survive the Closing. Seller represents that with respect to the Real Estate, Seller has no knowledge of, nor has Seller received any written notice from any association or governmental entity regarding:

   a) zoning, building, fire or health code violations that have not been corrected;
   b) any pending rezoning;
   c) boundary line disputes;
   d) any pending condemnation or Eminent Domain proceeding;
   e) easements or claims of easements not shown on the public records;
   f) any hazardous waste on the Real Estate;
   g) real estate tax exemption(s) to which Seller is not lawfully entitled; or
   h) any improvements to the Real Estate for which the required initial and final permits were not obtained.

Seller further represents that:

[INITIALS] _BD_ _EKB_ ____ ____ There [CHECK ONE] ☐ are ☒ are not improvements to the Real Estate which are not included in full in the determination of the most recent tax assessment.

[INITIALS] _BD_ _EKB_ ____ ____ There [CHECK ONE] ☐ are ☒ are not improvements to the Real Estate which are eligible for the home improvement tax exemption.

[INITIALS] _BD_ _EKB_ ____ ____ There [CHECK ONE] ☐ is ☒ is not an unconfirmed pending special assessment affecting the Real Estate by any association or governmental entity payable by Buyer after the date of Closing.

[INITIALS] _BD_ _EKB_ ____ ____ The Real Estate [CHECK ONE] ☐ is ☒ is not located within a Special Assessment Area or Special Service Area, payments for which will not be the obligation of Seller after the year in which the Closing occurs.

All Seller representations shall be deemed re-made as of Closing. If prior to Closing Seller becomes aware of matters that require modification of the representations previously made in this Paragraph 22, Seller shall

Buyer Initial _BD_   Buyer Initial _EKB_        Seller Initial _____ Seller Initial _____
Address: 1724 E 54th St Unit E, Chicago, IL 60615                                    v7.0
Page 7 of 13

307 promptly notify Buyer. If the matters specified in such Notice are not resolved prior to Closing, Buyer may
308 terminate this Contract by Notice to Seller and this Contract shall be null and void.

309 **23. REAL ESTATE TAX ESCROW:** In the event the Real Estate is improved, but has not been previously taxed for
310 the entire year as currently improved, the sum of three percent (3%) of the Purchase Price shall be deposited in
311 escrow with the title company with the cost of the escrow to be divided equally by Buyer and Seller and paid at
312 Closing. When the exact amount of the taxes to be prorated under this Contract can be ascertained, the taxes shall
313 be prorated by Seller's attorney at the request of either Party and Seller's share of such tax liability after proration
314 shall be paid to Buyer from the escrow funds and the balance, if any, shall be paid to Seller. If Seller's obligation
315 after such proration exceeds the amount of the escrow funds, Seller agrees to pay such excess promptly upon
316 demand.

317 **24. BUSINESS DAYS/HOURS:** Business Days are defined as Monday through Friday, excluding Federal holidays.
318 Business Hours are defined as 8 a.m. to 6 p.m. Chicago time. In the event the Closing or Loan Contingency Date
319 described in this Contract does not fall on a Business Day, such date shall be the next Business Day.

320 **25. ELECTRONIC OR DIGITAL SIGNATURES:** Facsimile or digital signatures shall be sufficient for purposes of
321 executing, negotiating, finalizing, and amending this Contract, and delivery thereof by one of the following
322 methods shall be deemed delivery of this Contract containing original signature(s). An acceptable facsimile
323 signature may be produced by scanning an original, hand-signed document and transmitting same by electronic
324 means. An acceptable digital signature may be produced by use of a qualified, established electronic security
325 procedure mutually agreed upon by the Parties. Transmissions of a digitally signed copy hereof shall be by an
326 established, mutually acceptable electronic method, such as creating a PDF ("Portable Document Format")
327 document incorporating the digital signature and sending same by electronic mail.

328 **26. DIRECTION TO ESCROWEE:** In every instance where this Contract shall be deemed null and void or if this
329 Contract may be terminated by either Party, the following shall be deemed incorporated: "and Earnest Money
330 refunded upon the joint written direction by the Parties to Escrowee or upon an entry of an order by a court of
331 competent jurisdiction."
332 In the event either Party has declared the Contract null and void or the transaction has failed to close as provided
333 for in this Contract and if Escrowee has not received joint written direction by the Parties or such court order, the
334 Escrowee may elect to proceed as follows:
335     a) Escrowee shall give written Notice to the Parties as provided for in this Contract at least fourteen (14) days
336        prior to the date of intended disbursement of Earnest Money indicating the manner in which Escrowee intends
337        to disburse in the absence of any written objection. If no written objection is received by the date indicated in
338        the Notice then Escrowee shall distribute the Earnest Money as indicated in the written Notice to the Parties.
339        **If any Party objects in writing** to the intended disbursement of Earnest Money then Earnest Money shall be
340        held until receipt of joint written direction from all Parties or until receipt of an order of a court of competent jurisdiction.
341     b) Escrowee may file a Suit for Interpleader and deposit any funds held into the Court for distribution after
342        resolution of the dispute between Seller and Buyer by the Court. Escrowee may retain from the funds deposited
343        with the Court the amount necessary to reimburse Escrowee for court costs and reasonable attorney's fees
344        incurred due to the filing of the Interpleader. If the amount held in escrow is inadequate to reimburse Escrowee
345        for the costs and attorney's fees, Buyer and Seller shall jointly and severally indemnify Escrowee for additional
346        costs and fees incurred in filing the Interpleader action.

347 **27. NOTICE:** Except as provided in Paragraph 30 c) 2) regarding the manner of service for "kick-out" Notices, all
348 Notices shall be in writing and shall be served by one Party or attorney to the other Party or attorney. Notice to
349 any one of the multiple person Party shall be sufficient Notice to all. Notice shall be given in the following manner:
350     a) By personal delivery; or

Buyer Initial __BD__ Buyer Initial __EKB__       Seller Initial _____ Seller Initial _____
Address: 1724 E 54th St Unit E, Chicago, IL 60615                                    v7.0
Page 8 of 13

351    b) By mailing to the addresses recited herein on Page 13 by regular mail and by certified mail, return receipt
352    requested. Except as otherwise provided herein, Notice served by certified mail shall be effective on the date of mailing; or
353    c) By facsimile transmission. Notice shall be effective as of date and time of the transmission, provided that the
354    Notice transmitted shall be sent on Business Days during Business Hours. In the event Notice is transmitted during
355    non-business hours, the effective date and time of Notice is the first hour of the next Business Day after transmission; or
356    d) By e-mail transmission if an e-mail address has been furnished by the recipient Party or the recipient Party's
357    attorney to the sending Party or is shown in this Contract. Notice shall be effective as of date and time of e-mail
358    transmission, provided that, in the event e-mail Notice is transmitted during non-business hours, the effective date
359    and time of Notice is the first hour of the next Business Day after transmission. An attorney or Party may opt out
360    of future e-mail Notice by any form of Notice provided by this Contract; or
361    e) By commercial overnight delivery (e.g., FedEx). Such Notice shall be effective on the next Business Day
362    following deposit with the overnight delivery company.
363    f) If a Party fails to provide contact information herein, as required, Notice may be served upon the Party's
364    Designated Agent in any of the manners provided above.
365    g) The Party serving a Notice shall provide courtesy copies to the Parties' Designated Agents. Failure to provide
366    such courtesy copies shall not render Notice invalid.

367 **28. PERFORMANCE: Time is of the essence of this Contract.** In any action with respect to this Contract, the Parties
368 are free to pursue any legal remedies at law or in equity and the prevailing party in litigation shall be entitled to collect
369 reasonable attorney fees and costs from the non-prevailing party as ordered by a court of competent jurisdiction.

370 **THE FOLLOWING NUMBERED PARAGRAPHS ARE A PART OF THIS CONTRACT ONLY IF INITIALED BY THE PARTIES.**

371 *[INITIALS]* ____ ____ ____ ____ **29. CONFIRMATION OF DUAL AGENCY:** The Parties confirm that they have previously
372 consented to N/A _____ *[LICENSEE]* acting as a Dual Agent in providing brokerage services on
373 their behalf and specifically consent to Licensee acting as a Dual Agent with regard to the transaction referred to in
374 this Contract.

375 ____ ____ ____ ____ **30. SALE OF BUYER'S REAL ESTATE:**
376    a) **REPRESENTATIONS ABOUT BUYER'S REAL ESTATE:** Buyer represents to Seller as follows:
377    1) Buyer owns real estate (hereinafter referred to as "Buyer's real estate") with the address of:
378 N/A               N/A               N/A               N/A .
379 Address               City               State               Zip
380    2) Buyer *[CHECK ONE]* ❏ has ❏ has not entered into a contract to sell Buyer's real estate.
381       If Buyer has entered into a contract to sell Buyer's real estate, that contract:
382       a) *[CHECK ONE]* ❏ is ❏ is not subject to a mortgage contingency.
383       b) *[CHECK ONE]* ❏ is ❏ is not subject to a real estate sale contingency.
384       c) *[CHECK ONE]* ❏ is ❏ is not subject to a real estate closing contingency.
385    3) Buyer *[CHECK ONE]* ❏ has ❏ has not publicly listed Buyer's real estate for sale with a licensed real estate broker
386       and in a local multiple listing service.
387    4) If Buyer's real estate is not publicly listed for sale with a licensed real estate broker and in a local multiple
388       listing service, Buyer *[CHECK ONE]*:
389       a) ❏ Shall publicly list real estate for sale with a licensed real estate broker who will place it in a local
390          multiple listing service within five (5) Business Days after Date of Acceptance.
391       *[FOR INFORMATION ONLY]* Broker: N/A
392       Broker's Address: N/A               Phone: N/A
393       b) ❏ Does not intend to list said real estate for sale.

*Buyer Initial* BD     *Buyer Initial* EKB     *Seller Initial* _____ *Seller Initial* _____
*Address:* 1724 E 54th St Unit E, Chicago, IL 60615        *v7.0*

b) **CONTINGENCIES BASED UPON SALE AND/OR CLOSING OF REAL ESTATE:**
1) This Contract is contingent upon Buyer having entered into a contract for the sale of Buyer's real estate that is in full force and effect as of __N/A__, 20 __N/A__. Such contract should provide for a closing date not later than the Closing Date set forth in this Contract. **If Notice is served on or before the date set forth in this subparagraph that Buyer has not procured a contract for the sale of Buyer's real estate, this Contract shall be null and void. If Notice that Buyer has not procured a contract for the sale of Buyer's real estate is not served on or before the close of business on the date set forth in this subparagraph, Buyer shall be deemed to have waived all contingencies contained in this Paragraph 30, and this Contract shall remain in full force and effect.** (If this paragraph is used, then the following paragraph <u>must</u> be completed.)
2) In the event Buyer has entered into a contract for the sale of Buyer's real estate as set forth in Paragraph 30 b) 1) and that contract is in full force and effect, or has entered into a contract for the sale of Buyer's real estate prior to the execution of this Contract, this Contract is contingent upon Buyer closing the sale of Buyer's real estate on or before __N/A__, 20 __N/A__. **If Notice that Buyer has not closed the sale of Buyer's real estate is served before the close of business on the next Business Day after the date set forth in the preceding sentence, this Contract shall be null and void. If Notice is not served as described in the preceding sentence, Buyer shall have deemed to have waived all contingencies contained in this Paragraph 30, and this Contract shall remain in full force and effect.**
3) If the contract for the sale of Buyer's real estate is terminated for any reason after the date set forth in Paragraph 30 b) 1) (or after the date of this Contract if no date is set forth in Paragraph 30 b) 1)), Buyer shall, within three (3) Business Days of such termination, notify Seller of said termination. **Unless Buyer, as part of said Notice, waives all contingencies in Paragraph 30 and complies with Paragraph 30 d), this Contract shall be null and void as of the date of Notice. If Notice as required by this subparagraph is not served within the time specified, Buyer shall be in default under the terms of this Contract.**

c) **SELLER'S RIGHT TO CONTINUE TO OFFER REAL ESTATE FOR SALE:** During the time of this contingency, Seller has the right to continue to show the Real Estate and offer it for sale subject to the following:
1) If Seller accepts another bona fide offer to purchase the Real Estate while contingencies expressed in Paragraph 30 b) are in effect, Seller shall notify Buyer in writing of same. Buyer shall then have __N/A__ hours after Seller gives such Notice to waive the contingencies set forth in Paragraph 30 b), subject to Paragraph 30 d).
2) Seller's Notice to Buyer (commonly referred to as a "kick-out" Notice) shall be in writing and shall be served on Buyer, not Buyer's attorney or Buyer's real estate agent. Courtesy copies of such "kick-out" Notice should be sent to Buyer's attorney and Buyer's real estate agent, if known. Failure to provide such courtesy copies shall not render Notice invalid. Notice to any one of a multiple-person Buyer shall be sufficient Notice to all Buyers. Notice for the purpose of this subparagraph only shall be served upon Buyer in the following manner:
   a) By personal delivery effective at the time and date of personal delivery; or
   b) By mailing to the address recited herein for Buyer by regular mail and by certified mail. Notice shall be effective at 10 a.m. on the morning of the second day following deposit of Notice in the U.S. Mail; or
   c) By commercial delivery overnight (e.g., FedEx). Notice shall be effective upon delivery or at 4 p.m. Chicago time on the next delivery day following deposit with the overnight delivery company, whichever first occurs.
3) If Buyer complies with the provisions of Paragraph 30 d) then this Contract shall remain in full force and effect.
4) If the contingencies set forth in Paragraph 30 b) are NOT waived in writing within said time period by Buyer, this Contract shall be null and void.
5) Except as provided in Paragraph 30 c) 2) above, all Notices shall be made in the manner provided by Paragraph 27 of this Contract.
6) Buyer waives any ethical objection to the delivery of Notice under this paragraph by Seller's attorney or representative.

Buyer Initial __BD__   Buyer Initial __EKB__   Seller Initial _____   Seller Initial _____
Address: 1724 E 54th St Unit E, Chicago, IL 60615 _____ v7.0

d) **WAIVER OF PARAGRAPH 30 CONTINGENCIES:** Buyer shall be deemed to have waived the contingencies in Paragraph 30 b) when Buyer has delivered written waiver and deposited with the Escrowee additional earnest money in the amount of $ N/A in the form of a cashier's or certified check within the time specified. **If Buyer fails to deposit the additional earnest money within the time specified, the waiver shall be deemed ineffective and this Contract shall be null and void.**

e) **BUYER COOPERATION REQUIRED:** Buyer authorizes Seller or Seller's agent to verify representations contained in Paragraph 30 at any time, and Buyer agrees to cooperate in providing relevant information.

**31. CANCELLATION OF PRIOR REAL ESTATE CONTRACT:** In the event either Party has entered into a prior real estate contract, this Contract shall be subject to written cancellation of the prior contract on or before N/A , 20 N/A . In the event the prior contract is not cancelled within the time specified, this Contract shall be null and void. If prior contract is subject to Paragraph 30 contingencies, Seller's notice to the purchaser under the prior contract should not be served until after Attorney Review and Professional Inspections provisions of this Contract have expired, been satisfied or waived.

**32. HOME WARRANTY:** Seller shall provide at no expense to Buyer a Home Warranty at a cost of $ N/A . Evidence of a fully pre-paid policy shall be delivered at Closing.

**33. WELL OR SANITARY SYSTEM INSPECTIONS:** Seller shall obtain at Seller's expense a well water test stating that the well delivers not less than five (5) gallons of water per minute and including a bacteria and nitrate test and/or a septic report from the applicable County Health Department, a Licensed Environmental Health Practitioner, or a licensed well and septic inspector, each dated not more than ninety (90) days prior to Closing, stating that the well and water supply and the private sanitary system are in operating condition with no defects noted. Seller shall remedy any defect or deficiency disclosed by said report(s) prior to Closing, provided that if the cost of remedying a defect or deficiency and the cost of landscaping together exceed $3,000, and if the Parties cannot reach agreement regarding payment of such additional cost, this Contract may be terminated by either Party. Additional testing recommended by the report shall be obtained at the Seller's expense. If the report recommends additional testing after Closing, the Parties shall have the option of establishing an escrow with a mutual cost allocation for necessary repairs or replacements, or either Party may terminate this Contract prior to Closing. Seller shall deliver a copy of such evaluation(s) to Buyer not less than ten (10) Business Days prior to Closing.

**34. WOOD DESTROYING INFESTATION:** Notwithstanding the provisions of Paragraph 12, within ten (10) Business Days after Date of Acceptance, Seller at Seller's expense shall deliver to Buyer a written report, dated not more than six (6) months prior to the Date of Closing, by a licensed inspector certified by the appropriate state regulatory authority in the subcategory of termites, stating that there is no visible evidence of active infestation by termites or other wood destroying insects. Unless otherwise agreed between the Parties, if the report discloses evidence of active infestation or structural damage, Buyer has the option within five (5) Business Days of receipt of the report to proceed with the purchase or to declare this Contract null and void.

**35. POSSESSION AFTER CLOSING:** Possession shall be delivered no later than 11:59 p.m. on the date that is *[CHECK ONE]* ❑ N/A days after the date of Closing or ❑ N/A , 20 N/A ("the Possession Date"). Seller shall be responsible for all utilities, contents and liability insurance, and home maintenance expenses until delivery of possession. Seller shall deposit in escrow at Closing with an escrowee as agreed, the sum of $ N/A (if left blank, two percent (2%) of the Purchase Price) and disbursed as follows:

a) The sum of $ N/A per day for use and occupancy from and including the day after Closing to and including the day of delivery of Possession if on or before the Possession Date;

b) The amount per day equal to three (3) times the daily amount set forth herein shall be paid for each day after the Possession Date specified in this paragraph that Seller remains in possession of the Real Estate; and

*Buyer Initial* BO *Buyer Initial* EKB    *Seller Initial* _____ *Seller Initial* _____
*Address:* 1724 E 54th St Unit E, Chicago, IL 60615                                   v7.0
*Page 11 of 13*

481     c) The balance, if any, to Seller after delivery of Possession and provided that the terms of Paragraph 21 have
482     been satisfied. Seller's liability under this paragraph shall not be limited to the amount of the possession escrow
483     deposit referred to above. Nothing herein shall be deemed to create a Landlord/Tenant relationship between the Parties.

484 \_\_\_ \_\_\_ \_\_\_ \_\_\_ **36. "AS IS" CONDITION:** This Contract is for the sale and purchase of the Real Estate in its "As Is"
485 condition as of the Date of Offer. Buyer acknowledges that no representations, warranties or guarantees with respect
486 to the condition of the Real Estate have been made by Seller or Seller's Designated Agent other than those known
487 defects, if any, disclosed by Seller. Buyer may conduct at Buyer's expense such inspections as Buyer desires. In that
488 event, Seller shall make the Real Estate available to Buyer's inspector at reasonable times. Buyer shall indemnify Seller
489 and hold Seller harmless from and against any loss or damage caused by the acts of negligence of Buyer or any person
490 performing any inspection. **In the event the inspection reveals that the condition of the Real Estate is unacceptable**
491 **to Buyer and Buyer so notifies Seller within five (5) Business Days after Date of Acceptance, this Contract shall be**
492 **null and void. Buyer's notice SHALL NOT include a copy of the inspection report, and Buyer shall not be obligated**
493 **to send the inspection report to Seller absent Seller's written request for same. Failure of Buyer to notify Seller or**
494 **to conduct said inspection operates as a waiver of Buyer's right to terminate this Contract under this paragraph and**
495 **this Contract shall remain in full force and effect.** Buyer acknowledges that the provisions of Paragraph 12 and the
496 warranty provisions of Paragraph 3 do not apply to this Contract. Nothing in this paragraph shall prohibit the exercise
497 of rights by Buyer in Paragraph 33, if applicable.

498 \_\_\_ \_\_\_ \_\_\_ \_\_\_ **37. SPECIFIED PARTY APPROVAL:** This Contract is contingent upon the approval of the Real
499 Estate by N/A _____ Buyer's Specified Party, within five (5) Business Days after Date
500 of Acceptance. In the event Buyer's Specified Party does not approve of the Real Estate and Notice is given to Seller
501 within the time specified, this Contract shall be null and void. If Notice is not served within the time specified, this
502 provision shall be deemed waived by the Parties and this Contract shall remain in full force and effect.

503 \_\_\_ \_\_\_ \_\_\_ \_\_\_ **38. ATTACHMENTS:** The following attachments, if any, are hereby incorporated into this Contract
504 *[IDENTIFY BY TITLE]*: _____
505 _____ .

506 \_\_\_ \_\_\_ \_\_\_ \_\_\_ **39. MISCELLANEOUS PROVISIONS:** Buyer's and Seller's obligations are contingent upon the
507 Parties entering into a separate written agreement consistent with the terms and conditions set forth herein, and with
508 such additional terms as either Party may deem necessary, providing for one or more of the following *[CHECK APPLICABLE BOXES]*:

509 ❏ Articles of Agreement for Deed     ❏ Assumption of Seller's Mortgage     ❏ Commercial/Investment
510    or Purchase Money Mortgage     ❏ Cooperative Apartment     ❏ New Construction
511 ❏ Short Sale     ❏ Tax-Deferred Exchange     ❏ Vacant Land
512 ❏ Multi-Unit (4 Units or fewer)     ❏ Interest Bearing Account     ❏ Lease Purchase

*Buyer Initial* \_BD\_ *Buyer Initial* \_EKB\_     *Seller Initial* _____ *Seller Initial* _____
*Address:* 1724 E 54th St Unit E, Chicago, IL 60615 _____ *v7.0*

513 THE PARTIES ACKNOWLEDGE THAT THIS CONTRACT SHALL BE GOVERNED BY THE LAWS OF THE STATE OF ILLINOIS AND IS SUBJECT TO THE
514 COVENANT OF GOOD FAITH AND FAIR DEALING IMPLIED IN ALL ILLINOIS CONTRACTS.
515 THIS DOCUMENT WILL BECOME A LEGALLY BINDING CONTRACT WHEN SIGNED BY ALL PARTIES AND DELIVERED TO THE PARTIES OR THEIR AGENTS.
516 THE PARTIES REPRESENT THAT THE TEXT OF THIS COPYRIGHTED FORM HAS NOT BEEN ALTERED AND IS IDENTICAL TO THE OFFICIAL MULTI-
517 BOARD RESIDENTIAL REAL ESTATE CONTRACT 7.0.

518 January 15, 2020
519 Date of Offer                                                          DATE OF ACCEPTANCE
520 [DocuSigned by: Berk Diler]
521 Buyer Signature                                                        Seller Signature
522 [DocuSigned by: Eliana K Butler]
523 Buyer Signature                                                        Seller Signature
524 Berk Diler and Eliana K Butler                                         Carmen J Gonzalez
525 Print Buyer(s) Name(s) [REQUIRED]                                      Print Seller(s) Name(s) [REQUIRED]
526
527 Address [REQUIRED]                                                     Address [REQUIRED]
528                                   IL
529 City, State, Zip [REQUIRED]                                            City, State, Zip [REQUIRED]
530 (773) 837-1262     berkdiler@gmail.com
531 Phone              E-mail                                              Phone              E-mail

532                                          **FOR INFORMATION ONLY**
533 Redfin Corporation                      478013085                      Baird & Warner                               86538
534 Buyer's Brokerage            MLS #      State License #                Seller's Brokerage           MLS #           State License #
535 112 S. Sangamon #400         Chicago    60607
536 Address                      City       Zip                            Address                      City            Zip
537 Keith Tarasiewicz            877313     475162258                      Andre Mitchell               887402
538 Buyer's Designated Agent     MLS #      State License #                Seller's Designated Agent    MLS #           State License #
539 (708) 705-2351                                                         (312) 414-3300
540 Phone                                   Fax                            Phone                                        Fax
541 keith.tarasiewicz@redfin.com                                           andre.mitchell@bairdwarner.com
542 E-mail                                                                 E-mail
543
544 Buyer's Attorney             E-mail                                    Seller's Attorney            E-mail
545
546 Address                      City       State     Zip                  Address                      City            State     Zip
547
548 Phone                                   Fax                            Phone                                        Fax
549
550 Mortgage Company                        Phone                          Homeowner's/Condo Association (if any)       Phone
551
552 Loan Officer                            Phone/Fax                      Management Co./Other Contact                 Phone
553
554 Loan Officer E-mail                                                    Management Co./Other Contact E-mail

555 | **Illinois Real Estate License Law requires all offers be presented in a timely manner; Buyer requests verification that this offer was presented.**
556 | Seller rejection: This offer was presented to Seller on _____, 20 ___ at ___:___ a.m./p.m. and rejected on _____
557 | _____, 20 ___ at ___:___ a.m./p.m. ___ ___ [SELLER INITIALS]

558 © 2018 Illinois Real Estate Lawyers Association. All rights reserved. Unauthorized duplication or alteration of this form or any portion thereof is prohibited. Official form available at www.irela.org
559 (website of Illinois Real Estate Lawyers Association). Approved by the following organizations, December 2018: Belvidere Board of REALTORS® · Chicago Association of REALTORS® · Chicago Bar
560 Association · DuPage County Bar Association · Heartland REALTOR® Organization · Grundy County Bar Association · Hometown Association of REALTORS® · Illinois Real Estate Lawyers Association ·
561 Illini Valley Association of REALTORS® · Kane County Bar Association · Kankakee-Iroquois-Ford County Association of REALTORS® · Mainstreet Organization of REALTORS® · McHenry County Bar
562 Association · North Shore-Barrington Association of REALTORS® · North Suburban Bar Association · Northwest Suburban Bar Association · Oak Park Area Association of REALTORS® · REALTOR®
563 Association of the Fox Valley, Inc. · Three Rivers Association of REALTORS · Will County Bar Association ·

Address: 1724 E 54th St Unit E, Chicago, IL 60615                                                                                          v7.0
Page 13 of 13